[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff Robert Finder appeals a decision of the defendant employees review board dismissing a grievance he filed after being laid off from his job in the defendant department of administrative services. The board acted pursuant to General Statutes § 5-202. The plaintiff's appeal is authorized by §§ 5-202(l) and4-183. The court finds the issues in favor of the defendants.
The facts essential to resolution of the issues on appeal are set forth in the board's decision and are not in dispute. The plaintiff was hired by the defendant department in 1978 as its Labor Relations Director. There were no other employees in that job classification, and it has always been a single person classification. At first, the job responsibilities expanded, but beginning CT Page 10242 in 1986/1987, the plaintiff's duties began to diminish. In 1986, the defendant department "red-circled" the plaintiff's classification, meaning it was designated for formal review if and when it became vacant. By April 1991, the plaintiff was performing comparatively menial work. Nevertheless, there had been no change in his classification or salary.
On April 4, 1991, the department notified the plaintiff that it intended to eliminate the plaintiff's position and lay him off effective June 13, 1991.
On May 31, 1991, the plaintiff sent a memorandum to the department stating:
 In order to protect my family financially, I find it necessary to process an application for retirement effective the first opportunity following my lay off which is July 1, 1991. Please prepare the necessary paperwork reflecting that date.
 Should my lay off be rescinded then obviously, my retirement application should not be processed.
On June 14, 1994, the plaintiff filed the grievance that became the subject of the board's decision and this appeal.
On July 1, 1991, the plaintiff's retirement took effect, and he began to receive benefits in accordance with the state pension plan.
During the Spring and Summer of 1992, while the grievance was pending before the board, the plaintiff and the board met and corresponded concerning the issues that the board would consider. These negotiations culminated in a "ruling" by the board stating, in relevant, part as follows:
 Whether Appellant's retirement was voluntary or involuntary, we think is probably now irrelevant. We agree with Appellant that the nature of the retirement goes to the remedy, if any, in the case. If the layoff is CT Page 10243 eventually found to have been improper, the conventional remedy would appear to be reinstatement with back pay, less pension benefits received. However, the fact that Appellant retired two weeks after his layoff complicates the situation. How can a person who has retired be reinstated in a position?
 Appellant's argument seems to be that his retirement was conditional, that is, he advised the State that he would accept retirement only if he lost his appeal on the validity of the layoff. That theory was not ruled on by the panel in its May 4th decision. That decision was limited to reemployment rights, and did not include a decision on the validity of the layoff. Nor was the novel theory of "conditional retirement" addressed.
The hearing before the designated panel of the board commenced in September 1992. The plaintiff and defendant department appeared, represented by counsel. Both parties presented testimony, other evidence and legal arguments, including post-hearing briefs. The board rendered its final decision on March 12, 1993.
The plaintiff argued to the board that his job classification was invalid because his actual duties were vastly different from those called for in the job description. Therefore, he claimed, the layoff was invalid, citing the board's decision in an earlier case,Daniel Cawley v. Department of Administrative Services. In that case, the board had held that the department should have reclassified the employee before laying him off. The department would then have been obligated under the layoff statute, § 5-241, to determine whether his accumulated years of service, when compared to the other employees in the new classification, would have protected him from layoff. The plaintiff contended that the board should follow the same reasoning in his case.
In its decision, the board distinguished the Cawley
case on its facts and refused to follow it in the plaintiff's case. The board first made the factual finding that the plaintiff voluntarily retired and CT Page 10244 accepted retirement benefits subsequent to the layoff. It held that it did not have the power to reverse or nullify the retirement and order the department to reclassify the plaintiff's job as it had done in Cawley.
The board found as a further distinguishing fact that the plaintiff is a "sophisticated grievant." As such, the board held, the plaintiff should have obtained a review of his classification himself, as provided in General Statutes § 5-202(n). The board noted in this regard that the department had given the plaintiff two months notice in advance of his layoff, sufficient time for him to pursue the reclassification route as a means of preserving his employment. The board concluded that, under the circumstances, the plaintiff's failure to utilize the procedure provided in § 5-200(n) was "unreasonable."
Based on its findings and conclusions, the board dismissed the plaintiff's grievance.
The plaintiff raises three general issues as the bases of his appeal: (1) that the board provided him inadequate advance notice of the issues it would consider in his case; (2) that the board committed errors of law and fact in refusing to follow the Cawley precedent; and (3) that there was insufficient evidence to support the board's finding that the plaintiff's retirement was voluntary.
General Statutes §§ 4-177 and 4-182 are the statutes in the Uniform Administrative Procedure Act governing the notices to be furnished prior to administrative hearings. These statutes require the administrative agency to notify the other parties to an administrative proceeding of the time, place and nature of the hearing; a statement of the legal authority for the hearing; and a brief statement of the law and facts asserted by the agency. The underlying purpose of the notice requirements, other than providing the necessary logistical and housekeeping information, is to afford due process to an individual against whom some state agency proposes to take some adverse action. The notice provisions are most crucial where the agency assumes the role of prosecutor or enforcer — advocating license revocation or monetary CT Page 10245 penalties, for example. In those cases, the individual has a constitutional right to adequate notice of the charges and the factual allegations underlying them. See,Hart Twin Volvo Corporation v. Commissioner of MotorVehicles, 165 Conn. 42 (1973).
As the defendant department observes in its brief to the court in this appeal, the law concerning notice of the issues and facts to be considered applies most forcefully to the moving party, not to the respondent, who has little or no role in determining the scope of those elements.
In the present case, the hearing had originally been scheduled for June 26, 1992, but was then rescheduled for September 28. The defendant board sent notice of the rescheduled hearing to the parties on August 4, 1994. It set forth the date, time and place of the hearing, as well as the names of the panel members and the statutory authority for the proceeding. Attached to that notice was a copy of the notice of the original June 26 hearing. It stated, in part, "The purpose of the hearing is to hear evidence and argument on your client's claim that his layoff was not properly determined in accordance with . . . Section 5-241." Subsequently, but before the hearing, the board issued the September 17, 1992, "ruling," quoted earlier in this decision. This served to augment the formal notice.
The court concludes that as a matter of law the board was not required to specify the precise issues and factual evidence it would consider at the hearing. As the grievant in the case, appealing an adverse decision to the board, the plaintiff was the moving party. He was free to frame the issues as he chose and to present the evidence that he wished. Neither the plaintiff, nor the defendant department, nor the board was limited in argument or evidence by the terms of the notice that the board sent in this case.
The court's conclusion concerning the notice issue applies particularly to the plaintiff's argument that the board failed to notify him that it might consider his "retirement" as a bar to taking any action to rescind his layoff. With regard to this issue in particular, the CT Page 10246 board's September 17, 1992, communication should have alerted the plaintiff that the board might have to wrestle with the question it explicitly asked: "How can a person who has retired be reinstated in a position?" The court also notes that the plaintiff filed a brief with the board prior to its decision in which he fully presented his legal arguments on this issue. Under these circumstances, the court concludes that the board's notice satisfied all statutory and constitutional requirements.
The plaintiff's second claim on appeal is that the board should have followed the ruling in the Cawley case and remanded his case to the department with instructions to reclassify the plaintiff's position and then determine whether he should be laid off from the new position, taking into account his seniority.
The plaintiff cites no Connecticut authority for the argument that the board was required to apply the same reasoning to his case as it did in a prior similar case. Cases decided by the employees review board are in fact decided by a panel composed of three members of the board. That procedure was followed in the Cawley case and in this case. Different panels decided the two cases. There is nothing in the statutes or regulations that requires a panel to apply the same legal reasoning as an earlier, different panel may have applied in a different case. Indeed, in this case, the chairperson of the panel alerted the plaintiff to the possibility of a different result when she observed in her September 17 "ruling" that ". . . this panel has not ruled on the applicability of the Cawley theory to the facts of this case . . . ."
Even if the board were required to follow prior rulings of its hearing panels, the panel in this case found two significant facts that distinguished it fromCawley. First, the panel found that the plaintiff was a "sophisticated grievant who failed to pursue the usual remedy for a misclassification." Secondly, the panel found that the plaintiff had retired voluntarily and was not, therefore, in a position to be reclassified.
The plaintiff's attack on the board's factual findings and the conclusions it drew from them invokes CT Page 10247 certain basic principles of administrative law. The scope of the court's review of an agency's decision is very limited. General Statutes § 4-183(f) provides that "(t)he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." "Judicial review of conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion." Conn. Light Power Co. v. Dept. of Public Utility Control, 219 Conn. 51,57 — 58 (1991). Similarly, "(w)ith regard to questions of fact, it is (not) the function of the trial court . . . to retry the case or to substitute its judgement for that of the administrative agency." Id. "The question is not whether the trial court would have reached the same conclusion but whether the record before the commission supports the action taken." Hospital ofSt. Raphael v. Commission on Hospitals Health Care,182 Conn. 314, 318 (1980).
In the present case, there was ample evidence to support the board's finding that the plaintiff was a "sophisticated grievant" in the context of state job classification statutes, regulations and procedures. His own testimony at the hearing established that he was a long time state employee, in the upper level of management, with responsibilities in the field of labor relations. He had supervised many other employees. His own job duties and classification had changed over the years. Given these undisputed facts, it was not unreasonable for the board to conclude that his level of sophistication should be taken into consideration in deciding whether the department should have taken the initiative in reclassifying him in the absence of any request from him.
The final issue raised by the plaintiff is the board's finding that he voluntarily retired, thereby precluding a Cawley type remand of his case. This is obviously a factual issue. The plaintiff testified at length on it, under both direct and cross examination and in response to questions from the panel members. The panel also had some documentary evidence, including the plaintiff's memorandum quoted earlier. CT Page 10248
"The `substantial evidence' rule governs judicial review of administrative factfinding under General Statutes § 4-183 . . . An administrative finding is supported by `substantial evidence' if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred . . . Such a standard of review allows less room for judicial scrutiny than does the `weight of the evidence' rule or the `clearly erroneous' rule . . . In determining whether an administrative finding is supported by `substantial evidence,' a court must defer to the agency's right to believe or disbelieve the evidence presented by any witness, even an expert, in whole or in part."" (Citations and internal quotation marks omitted). Briggs v. State Employees RetirementCommission, 210 Conn. 214, 217 (1989).
In the present case, the court concludes that the hearing panel had substantial evidence, as summarized above, to support its finding that the plaintiff's retirement was voluntary and was not rescinded or nullified in any way prior to the time when it took effect. In accordance with the general principles set forth above, furthermore, the court cannot find that the board acted unreasonably in concluding that the plaintiff's retirement precluded a remand of his case under the theory of the earlier Cawley decision.
The plaintiff's appeal is dismissed.
MALONEY, J. CT Page 10249